NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ANN RICHARDSON, | : |
| | : |
| Plaintiff, | : |
| | :  Civ. No. 04-5599 (AET) |
| v. | : |
| | :  MEMORANDUM OPINION |
| FOUNDATION OF HEALTH; FHS LIFE | : |
| AND HEALTH INSURANCE CO.; | : |
| FOUNDATION HEALTH INSURANCE | : |
| SYSTEMS, INC.; HEALTH NET LIFE | : |
| INSURANCE CO.; HEALTH NET, INC.; | : |
| JOHN DOE 1-5; and ABC CORP. 1-5, | : |
| | : |
| Defendants. | : |
| | : |

THOMPSON, U.S.D.J.

I.     Introduction

        This matter comes before the Court on the motion of Defendants Health Net Life

Insurance Company (f/k/a FHS Life and Health Insurance Company) and Health Net, Inc. (f/k/a

Foundation Health Systems, Inc.), improperly pled as Foundation Health Insurance Systems, Inc.

and/or as Foundation of Health (collectively, "Defendants"), for summary judgment.  The Court

has decided this motion after reviewing the submissions of the parties.  Pursuant to Fed. R. Civ.

P. 78, no oral argument was heard.  For the reasons stated below, the Court will grant

Defendants' motion.

II.     Background

        Plaintiff was covered for long-term disability benefits under the FHS Associate Long-

Term Disability Plan (the "FHS Plan") as an employee of Foundation Health Federal Services, Inc., a former affiliate of Defendants.  Plaintiff applied for benefits on or about May 29, 1998 under the FHS Plan after she was involved in an automobile accident on November 14, 1997. (Defs.' Ex. 7.)  Defendants approved Plaintiff's claim on or about June 15, 1998, and paid her a monthly benefit of $1,522.50 commencing on May 23, 1998. (Defs.' Ex. 13.)  In anticipation of Plaintiff's filing of a claim for Social Security Disability ("SSD") benefits, Defendants reduced Plaintiff's long-term disability benefits by an estimated SSD benefit of $991 per month, for a net benefit of $531.50 per month effective July 1, 1998.  (Defs.' Ex. 14.)

Soon after her accident in November 1997, Plaintiff sought treatment from Dr. Dorfner and Dr. Dubowitch.  Plaintiff was diagnosed with herniated discs at C3-C4 and C5-C6, radiculopathy of the left lower extremity, post-traumatic myofacitis, post-traumatic cephalgia, and post-traumatic carpal tunnel syndrome.  She underwent a left carpal tunnel release, and EMG Nerve Conduction Studies.  She was treated with physical therapy, exercise, and medication.

Dr. Stein, an orthopedic surgeon, conducted a physical examination of Plaintiff on or about March 11, 1998.  After considering Plaintiff's examination results, as well as her X-rays and the results of her other medical imaging studies, he found that there was "a lack of physiological basis for her subjective complaints of pain."  (Defs.' Ex. 18.)  He further found that Plaintiff did not require orthopedic follow-up care, and did not sustain permanent injuries or disability as the result of her 1997 car accident.

Dr. Lester, a specialist in physical medicine and rehabilitation, examined Plaintiff on or about September 30, 1999.  (Defs.' Ex. 8.)  Dr. Lester conducted a physical examination of Plaintiff and found that she was malingering with "poor effort on [a] range of motion testing."

-2-

(Defs.' Ex. 8 at 5.)  Dr. Lester noted that he reviewed a July 22, 1999 EMG report by Dr. Ragone.  The EMG report indicated multiple nerve conduction abnormalities, and led to Dr. Ragone's diagnosis of bilateral carpal tunnel syndrome and multilevel cervical radiculopathy involving the C5, C6, and C7 nerve roots.  Dr. Lester disagreed with Dr. Ragone's diagnosis and found that the nerve conduction abnormalities were the result of diabetic peripheral neuropathy, which probably developed from Plaintiff's insulin-dependent diabetes rather than from her 1997 car accident.  Dr. Lester noted that Plaintiff had a soft tissue injury of the cervical and lumbar regions, but concluded that Plaintiff had no physical impairment that would keep her from returning to work.  Dr. Dorfner, in turn, reviewed Dr. Lester's report.  He disagreed with Dr. Lester's report, and stated that Plaintiff suffered from severe radiculopathy of the left arm consistent with her EMG report, as well as headaches, and disabling left leg pain.  (Defs.' Ex. 9.)

On or about January 28, 2000, Dr. Ratner, an orthopedic surgeon specializing in spinal surgery, conducted a physical examination of Plaintiff.  He indicated that Plaintiff complained of pain in her neck, shoulder top, and lower back, but that there was little physical evidence to support her complaints.  (Defs.' Ex. 17.)  Dr. Ratner reviewed Plaintiff's medical records, and noted that an EMG of her left upper arm revealed changes consistent with left carpal tunnel syndrome, and that another EMG of Plaintiff's left lower leg was consistent with left low lumbar radiculopathy at L5 and S1.  Dr. Ratner concluded, however, that Plaintiff had suffered a soft tissue injury to her neck and back, and that such an injury would subside at the outset after three to four months.

On or about February 15, 2000, Defendants sent a letter to Plaintiff's attorney stating that Plaintiff's long-term disability benefits would be discontinued after February 29, 2000 because

-3-

"satisfactory proof of loss to support continued disability" was not provided.  (Defs.' Ex. 18.)

Defendants based their decision to terminate Plaintiff's benefits on the reports of her treating

physicians, Dr. Dorfner and Dr. Dubowitch, and the reports of their independent medical

examiners, Dr. Stein, Dr. Lester, and Dr. Ratner.

On or about March 23, 2000, Plaintiff's attorney sent a letter to Defendants to appeal their

decision to terminate her long-term disability benefits.  Plaintiff did not submit any additional

information, but requested that Defendants consider the reports of Dr. Dorfner and Dr.

Dubowitch, as well as the diagnostic test results.  (Defs.' Ex. 19.)  Defendants denied this appeal

on or about April 19, 2000, stating that the "duration of symptoms without objective evidence to

support them does not support the inability to function at a sedentary level occupation."  (Defs.'

Ex. 20.)

Defendants revisited Plaintiff's claim for long-term disability benefits when she

submitted information that her vision had decreased and that she had undergone eye surgery.

(Defs.' Ex. 21.)  Reports from Dr. Lipkowitz and Dr. Sardi indicated that Plaintiff had diabetic

retinopathy and significant macular edema.  Defendants' medical department found that Plaintiff

suffered from a diabetic eye disease as early as November 1997, but her vision was stable until

February 15, 2000.  When her vision worsened dramatically in her right eye, Plaintiff underwent

laser treatments.  (Defs.' Ex. 24.)  Plaintiff also submitted information about her spinal condition.

Dr. Rogers examined Plaintiff on or about July 14, 2000.  Based on an MRI conducted on April

26, 2000, he diagnosed Plaintiff with central spinal stenosis at L3-4 due to superior articular

process hypertrophy and bilateral spondyloarthritis of the facets.  Dr. O'Shea found that Plaintiff

had small central herniated discs at C3-4 and C5-6 based on a cervical spine MRI conducted on

July 28, 2000.

Defendants denied Plaintiff's claim on or about November 21, 2000 based on their review of Dr. Lipkowitz's office notes, Dr. Sardi's letter, Dr. Roger's letter, and Dr. O'Shea's letter. (Defs.' Ex. 24.)  Despite the indication of abnormalities in the MRIs conducted on Plaintiff in April and July 2000, Defendants concluded that there was no support for objective functional limitations that would preclude Plaintiff from returning to her previous position as a health benefits coordinator.  On or about November 21, 2000, Plaintiff submitted an additional letter from Dr. Rogers to Defendants in support of her claim for benefits.  Dr. Rogers noted in his letter that Plaintiff complained of lumbar pain that radiated to the right lower extremity, and that there was some degree of hyperesthesia and dysesthesia in the left upper extremity, and weakness in the left bicep.  Defendants considered the letter, but concluded that they would uphold their earlier decision to deny Plaintiff's claim for benefits on November 27, 2000.  (Defs.' Ex. 25.)

In the meantime, as required by the FHS Plan, Plaintiff applied for SSD benefits on July 9, 1998.  Her application was denied on June 16, 1999, and Plaintiff subsequently appealed.  On May 10, 2001, an Administrative Law Judge ("ALJ") for the Social Security Adminstration found Plaintiff to be "disabled" as of November 14, 1997, and granted her SSD benefits.  The ALJ considered Plaintiff's medical records, as well as reports from Dr. Dorfner and Dr. Dubowitch, but did not consider the reports of Defendants' independent medical examiners, Dr. Stein, Dr. Lester, and Dr. Ratner.  (Defs.' Ex. 31.)

When Plaintiff notified Defendants that her application for SSD benefits had been approved, Defendants sent Plaintiff's claim file to the Medical Review Institute, an independent third-party, for review.  (Defs.' Ex. 33.)  In a report dated July 17, 2001, the Medical Review

Institute concluded that the records did not show that Plaintiff was disabled by the 1997 car accident, and that there was no indication that Plaintiff had sustained an injury that would prevent her from returning to her prior job.  (Defs.' Ex. 34.)  On or about November 1, 2001, Defendants informed Plaintiff's attorney that they would deny Plaintiff's appeal of their decision to terminate her benefits after reviewing the Medical Review Institute's report and Dr. Dorfner's comments on the report.  (Defs.' Ex. 38.)

On or about March 30, 2004, Plaintiff filed the present action to recover long-term disability benefits under the FHS Plan in the Superior Court of New Jersey, Law Division, Mercer County.  The case was removed to the District of New Jersey on November 12, 2004 because Plaintiff's claim is governed by § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).  Defendants filed the present motion for summary judgment on April 18, 2006.

III.   Discussion

A.   Standard for Summary Judgment

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000).  In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," Fed. R. Civ. P. 56(c), and construes all facts and inferences in the light most favorable to the nonmoving party.  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).  Only evidence that would be admissible at trial will be considered.  Pamintuan v.

-6-

Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414 (3d Cir. 1999).  If the nonmoving party would bear the burden of persuasion at trial, the moving party may discharge this prima facie burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.  The burden then shifts to the nonmoving party "to make a showing sufficient to establish the existence of an element essential to that party's case."  Padillas, 186 F.3d at 414 (quoting Celotex, 477 U.S. at 322).  To successfully defend against a motion for summary judgment, a plaintiff cannot merely rely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

      B.     Standard of Review Under ERISA

Where an ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the decision to deny benefits is reviewed under the arbitrary and capricious standard.  McLeod v. Hartford Life & Accident Ins. Co., 372 F.3d 618, 623 (3d Cir. 2004) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Under the arbitrary and capricious standard, the Court may overturn Defendants' decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Id. (quoting Abnathya v. Hoffman-La Roche, Inc., 2 F.3d 40, 45 (3d Cir. 1993)).  Under this standard of review, "the court is not free to substitute its own judgement for that of the [Defendants] in determining eligibility for plan benefits."  Abnathya, 2 F.3d at 45.  Because the FHS Plan gives Defendants full discretion to determine eligibility for

benefits and to interpret the terms of the policy, the Court will apply the arbitrary and capricious standard of review.  (Defs.' Ex. 10 at 9.)  The Court notes that no evidence has been presented to warrant application of a "heightened arbitrary and capricious" standard of review under <u>Pinto v. Reliance Standard Life Ins. Co.</u>, 214 F.3d 377, 387-88 (3d Cir. 2000), and that the parties agree that application of the arbitrary and capricious standard of review is proper.

      <u>C.</u>     <u>Analysis</u>

      Defendants contend that their decision to deny Plaintiff benefits under the FHS Plan was supported by evidence in the record, and that, in making their decision, they complied with plan procedures.  <u>See</u> <u>Abnathya</u>, 2 F.3d at 41 ("Under the arbitrary and capricious standard, the court must defer to the administrator of an employee benefit plan unless the administrator's decision is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.").  Defendants alternatively argue that Plaintiff's claim for damages is barred because she received payments under automobile insurance policies that would completely offset her benefits under the FHS Plan.  In response, Plaintiff argues that Defendants' decision was not supported by the record because they relied on medical reports that were disputed by her treating physician, Dr. Dorfner.  Plaintiff points out that the Social Security Administration approved her application for disability benefits based on the same medical records submitted to Defendants.  Plaintiff also argues that the automobile insurance payments that she received cannot be used to offset her benefit payments under the FHS Plan because they were used to pay for attorneys' fees and medical bills.

      Under the terms of the FHS Plan, Plaintiff must be "Totally Disabled" or "Residually Disabled" to receive benefits.  "Totally Disabled" means that Plaintiff must be "prevented by . . .

accidental bodily injury . . . from performing the essential duties of [her] occupation." (Defs.'
Ex. 10 at 3.) "Residually Disabled" means that Plaintiff must be "prevented by . . . accidental
bodily injury . . . from performing some, but not all, the essential duties of [her] occupation."
(Defs.' Ex. 10 at 3.) Defendants denied Plaintiff benefits under the FHS Plan because they found
that she was not "Totally Disabled" and that she could return to her previous employment as a
health benefits coordinator. (Defs.' Exs. 18, 20, 24, 25, & 38.)

      Under the arbitrary and capricious standard of review, the Court will examine the record
to determine whether Defendants' decision was supported by evidence therein. First, in their
February 15, 2000 letter, Defendants initially decided to deny benefits to Plaintiff after
considering information from Dr. Dorfner, Dr. Dubowitch, Dr. Stein, Dr. Lester, and Dr. Ratner.
Dr. Dorfner and Dr. Dubowitch indicated that Plaintiff had herniated discs at C3-C4 and C5-C6,
radiculopathy of the left lower extremity, post-traumatic myofacitis, post-traumatic cephalgia,
and post-traumatic carpal tunnel syndrome in 1997. Dr. Stein, Dr. Lester, and Dr. Ratner
conducted physical examinations of Plaintiff between 1998 and 2000. They concluded that
Plaintiff's subjective complaints of pain were not supported by the objective medical evidence,
that Plaintiff should have recovered from the injuries from the car accident, and that Plaintiff
could return to her previous position as a health benefits coordinator. (Defs.' Exs. 8, 17, & 18.)
Dr. Dorfner and Dr. Dubowitch did not provide any objective medical evidence, or results of
their physical examinations of Plaintiff to refute the reports of Dr. Stein, Dr. Lester, and Dr.
Ratner.

      Next, Defendants informed Plaintiff that she had the right to appeal their decision under
ERISA in their letter. Plaintiff appealed their decision on March 23, 2000, but did not submit

any additional information.  After Defendants denied Plaintiff's appeal on April 19, 2000,

Plaintiff appealed again and submitted information about her vision problems and new MRI

results regarding her spine.  Defendants considered this information, but noted that Plaintiff's

vision was 20/20 in her left eye and 20/70 in her right eye, and that her MRI results did not show

that Plaintiff had objective functional limitations that would keep her from returning to work.

(Defs.' Ex. 24.)  As a result, Defendants denied Plaintiff's appeal on November 21, 2000.

Defendants then considered a letter from Dr. Rogers describing Plaintiff's feelings of pain and

weakness in her left bicep, and concluded that the letter did not show that Plaintiff could no

longer perform sedentary work as a health benefits coordinator.  Each time Defendants denied

Plaintiff's appeals, they based their decision on the medical evidence in the record.

Finally, after Plaintiff informed Defendants of her successful application for SSD

benefits, Defendants submitted Plaintiff's file for another review by the Medical Review

Institute, an independent third-party.  Defendants denied Plaintiff's appeal on November 1, 2001

based on the findings of Medical Review Institute, and the response of Dr. Dorfner.  Defendants

noted that the Medical Review Institute reviewed all of the medical evidence in Plaintiff's file,

and found that there was no medical correlation between Plaintiff's complaints and her car

accident.  The Medical Review Institute also indicated that Dr. Dorfner's response to its report

did not document any objective medical evidence to substantiate Plaintiff's claim of total

disability.

The Court notes that it cannot substitute its own judgment of eligibility for benefits for

that of Defendants under the applicable standard of review.  Abnathya, 2 F.3d at 45.  After its

review of the record, the Court is unable to conclude that Defendants' decision was unreasonable

or unsupported by the record.  Defendants complied with the terms of their policy, considered

each of Plaintiff's submissions appealing their decision, and gave reasons for their findings based

on evidence in the record.  Defendants were not bound by the opinion of Plaintiff's treating

physician.  <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 825 (2003) (holding "that plan

administrators are not obliged to accord special deference to the opinions of treating

physicians").  Nor were Defendants bound by the determination of the Social Security

Administration.  <u>Russell v. Paul Revere Life Ins. Co.</u>, 148 F. Supp. 2d 392, 409 (D. Del. 2001)

(noting that a "plan administrator is in no way bound by the determination of the Social Security

Administration").  As a result, the Court grants summary judgment to Defendants.

Because the Court grants summary judgment after concluding that Defendants did not

make an arbitrary and capricious decision to terminate Plaintiff's benefits, it will not address

Defendants' contention that Plaintiff received payments from automobile insurance policies that

would bar her damages claim.

IV.    Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted.

An appropriate Order accompanies this Opinion.


s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.


Dated: 8/28/06